**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Newark Vicinage)**

ERROL ALISTAIR, an individual; JUNHAO, an individual; LUCKY D., an individual; JONG R.D., an individual; HOW YUAN, an individual; S. ROBERTS, an individual; B. KEN, an individual; J. BELL, an individual; MOREBET LIMITED, a United Kingdom limited liability company; L. ZHAO, an individual; KHOO WING, an individual; P. DEVIN, an individual; SUNLI, an individual; LOODS B.V., a European Union limited liability company; S. JAMES, an individual; YANG HOW, an individual; K. DAVID, an individual; EDWARD JOHNS, an individual; NICKLE LEE, an individual; S. JONG, an individual; DRAKE HK, a Hong Kong limited liability company; and JUSTIN BERK, an individual,

*Plaintiffs,*

v.

FRANCIS DECKER, CPA; LORI A. ROTH; MICHAEL J. AROYO, CPA; DAVID A. MOSS, CPA; BRIAN GOLDBLATT, CPA; STUART H. MAYER, CPA; RONALD FRIEDLANDER, CPA; WALT BRASCH JR., CPA; GLENN L. FRIEDMAN, CPA; CRAIG MICHAELSON; JOSEPH D. ZARKOWSKI, CPA; and JOHN DOES 8-10 (fictitiously named persons), each individually,

*Defendants.*

Civil Action No.: ____________

**COMPLAINT FOR INDIVIDUAL PARTNER LIABILITY**

Counts: Professional Malpractice; Gross Negligence; Negligence Per Se; Negligent Misrepresentation; Reckless Misrepresentation (Decker); Post-Collapse Reckless Misrepresentation (Friedman); Substantial Assistance in Professional Negligence; Civil Conspiracy; Unjust Enrichment

**JURY TRIAL DEMANDED**

**ATTORNEYS FOR PLAINTIFFS**

**Anthony Scordo, Esq., P.C.**
NJ Attorney ID: 024591987
69 East Allendale Road
Saddle River, New Jersey 07458
Tel: (973) 837-1861 | AnthonyScordo@msn.com
*Lead New Jersey Counsel for Plaintiffs*

**Edward Lehman, Esq. (IL SBN 6194489)**
Lehman, Lee & Xu LLC (Saipan #25977-001-1)
Suite 3313, Tower One, Times Square, 1 Matheson Street
Causeway Bay, Hong Kong SAR
Tel: (852) 3588-2188 | elehman@lehmanlaw.com
*Pro Hac Vice Admission Sought — International Counsel for Plaintiffs*

## PRELIMINARY STATEMENT

This is a professional negligence and reckless misrepresentation action against eleven named partners of Prager Metis CPAs, LLC who personally participated in, supervised, or were required to supervise the FTX audit engagements and recklessly failed to do so in accordance with applicable professional standards. Each claim herein sounds in professional negligence, gross negligence, reckless disregard for professional obligations, and negligent or reckless misrepresentation — the precise categories of conduct for which professional liability insurance exists and is required to respond.

Lead Plaintiff Errol Alistair (Singapore) suffered losses in excess of USD $25,000,000. Plaintiff Junhao (Korea) suffered losses in excess of USD $500,000,000. Aggregate compensatory losses of all named Plaintiffs exceed USD $525,000,000. The April 8, 2026 SEC Order (Release No. 34-105184) establishes that Defendant Decker's personal conduct constituted a departure from professional standards. As to all other Defendants, Plaintiffs allege gross negligence, systemic recklessness, and personal participation in quality management failures — each constituting covered conduct under the applicable professional liability tower.

## NATURE OF ACTION

This action arises from a systemic breakdown in professional judgment at Prager Metis CPAs, LLC — a breakdown that began when the individual Defendants named herein recklessly

accepted a multi-billion-dollar audit engagement involving a novel, complex crypto-asset trading platform without possessing the competence required by Generally Accepted Auditing Standards, and that continued through two complete audit cycles ending in the issuance of false and misleading audit reports that FTX's customers — including each Plaintiff — relied upon in entrusting their assets to FTX. FTX collapsed in November 2022, and each Plaintiff lost all or substantially all of their entrusted assets.

Each named Defendant's individual liability rests not on their status as partners, but on their personal acts and omissions as professional accountants who each held specific quality management, supervisory, or oversight responsibilities that required them individually to prevent the failures described herein. Their reckless disregard for those responsibilities renders them personally liable under New Jersey law.

## THE PARTIES

**I. Plaintiffs**

1. Plaintiff ERROL ALISTAIR is a citizen and resident of the Republic of Singapore and is the Lead Plaintiff. During the relevant period, Alistair maintained an account on the FTX platform. He became aware through public disclosures, financial media, and FTX's customer-facing communications that FTX had retained Prager Metis CPAs, LLC as its independent auditor and that Prager Metis had issued unqualified audit opinions. In direct and detrimental reliance upon those representations — which resulted from the individual Defendants' reckless and negligent conduct — Alistair entrusted assets to FTX. He suffered losses in excess of USD $25,000,000 as a direct and proximate result. He would not have entrusted those assets but for Defendants' representations.

2. Plaintiff JUNHAO is a citizen and national of the Republic of Korea. During the relevant period, Junhao maintained accounts on the FTX platform and entrusted substantial assets thereto. In direct and detrimental reliance upon PM's unqualified audit opinions — which resulted from the individual Defendants' reckless and negligent conduct — Junhao entrusted assets to FTX and maintained his accounts on the platform. He suffered losses in excess of USD $500,000,000 as a direct and proximate result.

3. Plaintiff LUCKY D. is a resident of Hong Kong, People's Republic of China. In reliance on PM's unqualified audit opinions, Lucky D. entrusted substantial assets to FTX and suffered losses of approximately USD $620,000 upon FTX's collapse.

4. Plaintiff JONG R.D. is a citizen and resident of the European Union. Upon learning of PM's audit opinions, Jong R.D. transferred greater assets to FTX. On November 11, 2022, his withdrawal requests were refused and remain unexecuted.

5. Plaintiff S. ROBERTS is a resident of the Republic of Singapore who specifically reviewed FTX's security section disclosing PM's auditor status before depositing and held approximately USD $3,700,000 at the time of FTX's collapse.

6. Plaintiff B. KEN is a resident of the Republic of Singapore who specifically chose FTX over unaudited competitors. He deposited in excess of USD $660,000 with FTX.

7. Plaintiff J. BELL is a resident of the United Kingdom.

8. Plaintiff MOREBET LIMITED is a limited liability company organized under the laws of the United Kingdom.

9. Plaintiff L. ZHAO is a resident of Hong Kong, People's Republic of China.

10. Plaintiff KHOO WING is a resident of the Republic of Singapore.

11. Plaintiff P. DEVIN is a resident of the Republic of Singapore.

12. Plaintiff SUNLI is a resident of the Republic of Singapore.

13. Plaintiff LOODS B.V. is a limited liability company organized under the laws of the European Union.

14. Plaintiff S. JAMES is a resident of the European Union.

15. Plaintiff YANG HOW is a resident of Hong Kong, People's Republic of China, who held approximately USD $950,000 in FTX assets, all of which were lost.

16. Plaintiff K. DAVID is a resident of Hong Kong, People's Republic of China.

17. Plaintiff EDWARD JOHNS is a resident of Hong Kong, People's Republic of China.

18. Plaintiff NICKLE LEE is a resident of Hong Kong, People's Republic of China.

19. Plaintiff S. JONG is a resident of Korea.

20. Plaintiff DRAKE HK is a limited liability company organized under the laws of Hong Kong.

21. Plaintiff JUSTIN BERK is a resident of Hong Kong, People's Republic of China.

## **II. Individual Defendants**

22. Defendant FRANCIS DECKER, CPA — Prager Metis CPAs, LLC, 401 Hackensack Avenue, 4th Floor, Hackensack, NJ 07601 — was at all relevant times an equity partner at Prager Metis and the lead engagement partner on all FTX audits. Decker is a Certified Public Accountant licensed in New Jersey. SEC Order Release No. 34-105184 (April 8, 2026) found Decker personally engaged in improper professional conduct. He personally

accepted the engagement, assembled the team, designed audit procedures, authorized the July 30, 2021 and April 2, 2022 audit reports, and post-collapse closed workpapers that had remained open in violation of AU-C § 230.16. Each act constitutes personal participation in wrongful conduct under N.J.S.A. 42:1A-306.

23. Defendant LORI A. ROTH, CPA/ABV, CFF — Prager Metis CPAs, LLC, 222 Mount Airy Road, Basking Ridge, NJ 07920 — was at all relevant times Co-Managing Partner (effective January 1, 2021) and then Global Managing Partner, and is now CEO. A New Jersey resident and NJCPA member, she has specialized in audit and assurance services since 1984. During the FTX audit period she bore personal institutional responsibility for firm-level client acceptance policies, quality management systems, and partner oversight under SQMS No. 1 and SQCS No. 8.

24. Defendant MICHAEL J. AROYO, CPA — Prager Metis CPAs, LLC, 101 Interchange Plaza, Suite 301, Cranbury, NJ 08512 and 401 Hackensack Avenue, 4th Floor, Hackensack, NJ 07601 — was at all relevant times Managing Partner of the Cranbury NJ office and Co-Chair of the Audit Department on a firm-wide basis. With over 30 years of audit experience, Aroyo bore personal institutional responsibility for oversight of all significant audit engagements including FTX under SQMS No. 1 and AU-C § 220.

25. Defendant DAVID A. MOSS, CPA — Prager Metis CPAs, LLC, 401 Hackensack Avenue, 4th Floor, Hackensack, NJ 07601 — was at all relevant times a Partner in the Assurance Department serving as Partner-in-Charge of the Public Company Audit Practice at PM's Hackensack NJ office. With approximately 40 years of experience and extensive background in practice development and risk management, Moss was personally required

to review and approve significant audit engagements including FTX and to supervise the engagement team.

26. Defendant BRIAN GOLDBLATT, CPA — Prager Metis CPAs, LLC, 14 Penn Plaza, Suite 1800, New York, NY 10122 — was at all relevant times a Partner in the Audit and Accounting Department and the firm's designated Industry Leader of Digital Assets, leading PM's international digital asset division which publicly claimed to work with 'a top three global cryptocurrency exchange in the world' — upon information and belief, a reference to FTX. Goldblatt's individual liability arises from his reckless failure either to ensure PM's designated crypto-audit expertise was deployed to the FTX engagement or, if deployed, to identify and correct the fundamental GAAS violations described herein.

27. Defendant STUART H. MAYER, CPA — Prager Metis CPAs, LLC, 14 Penn Plaza, Suite 1800, New York, NY 10122 (also: 2381 Rosecrans Avenue, Suite 350, El Segundo, CA 90245) — was at all relevant times Northeast Regional Managing Partner and Executive Committee member. His Northeast Regional Managing Partner role encompassed oversight of the NJ and NY offices from which the FTX audits were primarily conducted.

28. Defendant RONALD FRIEDLANDER, CPA — Prager Metis CPAs, LLC, 401 Hackensack Avenue, 4th Floor, Hackensack, NJ 07601 — was at all relevant times Managing Partner of PM's Hackensack NJ office. He bore personal oversight responsibility for partners and staff conducting the FTX engagement from that office.

29. Defendant WALT BRASCH JR., CPA — Prager Metis CPAs, LLC, 2381 Rosecrans Avenue, Suite 350, El Segundo, California 90245 — joined Prager Metis in December 2020 as Managing Partner of the El Segundo CA office and as Partner-in-Charge of the Public Company Audit Practice nationwide. He assumed these responsibilities six weeks

before the FTX engagement commenced in February 2021. FTX was pursuing an IPO and private fundraising — precisely within Brasch's designated domain. Brasch recklessly failed to ensure the FTX team possessed the required competence and that the audits were conducted in accordance with GAAS.

30. Defendant GLENN L. FRIEDMAN, CPA, CGMA — Prager Metis CPAs, LLC, 14 Penn Plaza, Suite 1800, New York, NY 10122 — was at all relevant times CEO and Co-Managing Partner of Prager Metis. He exercised ultimate institutional authority over client acceptance, partner oversight, and quality management during the FTX audit period. On or about November 18, 2022 — after FTX's collapse — Friedman authorized and caused PM to publicly state to Bloomberg Tax: 'We believe the financial statements of FTX Trading Ltd. as of 12/31/21 were fairly stated and we stand behind our audit opinion.' This constitutes a separate, independent wrongful act — a reckless post-collapse misrepresentation made when Friedman knew or recklessly disregarded that PM's audit opinions were unsupported. Friedman resides in New York.

31. Defendant CRAIG MICHAELSON — Prager Metis CPAs, LLC, 14 Penn Plaza, Suite 1800, New York, NY 10122 — was at all relevant times Chief Operating Officer and a Partner. He oversaw day-to-day firm operations including operational decisions surrounding client acceptance, engagement staffing, and quality control compliance during the FTX audit period.

32. Defendant JOSEPH D. ZARKOWSKI, CPA — Prager Metis CPAs, LLC, 222 Mount Airy Road, Basking Ridge, NJ 07920 — joined Prager Metis in April 2018 as Partner-in-Charge of the Advisory Group and Public Company Audit Practice at the Basking Ridge NJ office. In this capacity he was personally responsible for developing and managing public

company audit services. Upon information and belief, Zarkowski was employed by or affiliated with Prager Metis during the period of the FTX audit engagements (February 2021 through April 2022). Plaintiffs will confirm his tenure through early discovery.

33. Defendants JOHN DOES 8-10 are fictitiously named Prager Metis partners whose identities remain unknown. They are believed to have participated in the client acceptance, concurring review, or supervision of the FTX engagement. Their identities will be confirmed through early discovery and PCAOB registration records.

## JURISDICTION AND VENUE

34. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Alistair is a Singapore citizen; Junhao is a Korean national; all other Plaintiffs are foreign citizens or foreign business entities. Defendants Decker, Roth, Aroyo, Moss, Mayer, Friedlander, and Zarkowski are New Jersey citizens or New Jersey-based. Defendants Friedman, Michaelson, and Goldblatt are New York-based. Defendant Brasch is California-based. The amount in controversy exceeds USD $75,000 exclusively of interest and costs; aggregate compensatory losses exceed USD $525,000,000.

35. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). The majority of Defendants reside in this District. The FTX audits were primarily conducted from PM's New Jersey offices. A substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTS COMMON TO ALL COUNTS

### I. Prager Metis's Pre-Existing Known Quality Control Failures

36. Prior to accepting the FTX engagement in February 2021, the PCAOB found deficiencies in all four of Prager Metis's public company audits it reviewed. Each Defendant who participated in firm governance, quality oversight, or audit leadership knew or should have known of these systemic quality control deficiencies at the time they accepted and conducted the FTX engagement — compounding a known institutional failure with a high-risk novel engagement.

### II. The FTX Engagement: A Specifically Targeted Customer Audience

37. FTX engaged Prager Metis beginning in February 2021 to audit its financial statements for the express purposes of: (a) facilitating a planned IPO; (b) supporting private equity fundraising; and (c) promoting customer confidence in FTX's platform. FTX's KYC-verified, individually identifiable customer base — of which each Plaintiff was a member — constituted the specifically identified audience for PM's audit opinions. PM and each individual Defendant were aware that FTX customers would rely on PM's unqualified opinions in entrusting assets to FTX.

38. PM and its individual partners actively promoted FTX's audited status through specific acts:

(a) PM publicly branded itself as 'accountants to the metaverse,' directed at the digital-asset community which included FTX's customer base.

(b) In January 2022, Defendant Goldblatt publicly stated PM worked with 'a top three global cryptocurrency exchange in the world' from an audit perspective — upon

information and belief, a reference to FTX. This constitutes a direct, public expression to the FTX customer community of PM's professional involvement and understanding of customer reliance.

(c) In June 2022, PM published a post stating it was 'proud to support FTX US' — since deleted but archived in Google's search cache at the time of FTX's collapse. This affirmative advertising statement directly expressed PM's understanding that FTX's customers relied on PM's professional relationship with FTX.

(d) PM did not disclaim, correct, or prevent FTX's use of PM's unqualified audit opinions in direct customer-facing communications at any time prior to FTX's collapse.

## III. Decker's Personal Failures: The Foundational Competence and Acceptance Violation

39. Decker accepted the FTX engagement in February 2021 — approximately three weeks after his first introduction to Bankman-Fried — without conducting the competence assessment required by AU-C § 220.14 and SQCS No. 8. He lacked foundational knowledge of crypto-asset trading platforms, standard industry terminology, and widely publicized industry risks. The team he assembled collectively lacked the competence, experience, and knowledge to conduct the FTX audits. SEC Order ¶¶ 2, 10.

40. Decker personally authorized: (i) the July 30, 2021 audit report falsely stating the audits were conducted in accordance with GAAS (SEC Order ¶ 17); and (ii) the April 2, 2022 audit report with the same false representation (SEC Order ¶ 19). He left workpapers for both audits unfinalized in knowing violation of AU-C § 230.16, closing them only post-collapse under management instruction. SEC Order ¶ 22.

## IV. The Alameda Failure

41. Decker knew or should have known that Alameda Research LLC was co-founded and co-owned by Bankman-Fried and Gary Wang — who also co-founded FTX — and that Bankman-Fried was CEO of both entities simultaneously until October 2021, with FTX and Alameda sharing employees, office space, and infrastructure. SEC Order ¶ 13. Despite this knowledge, Decker and the team recklessly failed to adequately assess the FTX-Alameda related-party relationship.

42. A PM partner's workpaper notation acknowledged significant unrecorded related-party transactions between FTX and Alameda. The team recklessly accepted a one-page IOU as documentation of this multi-billion-dollar relationship in direct violation of AU-C §§ 230, 265, and 550. The audit was conducted as if Alameda did not exist as an audit concern. The undisclosed Alameda borrowing arrangement was the direct mechanism of the misappropriation of billions of dollars of FTX customer assets. SEC Order ¶ 3.

## V. The Supervisory Defendants' Personal Recklessness

43. Defendants Roth, Mayer, Aroyo, Moss, Friedlander, Brasch, Friedman, Michaelson, and Zarkowski each held governance, supervisory, or oversight roles requiring them personally to ensure: (a) adequate competence assessment before client acceptance; (b) qualified engagement team; (c) escalation of red flags; and (d) no issuance of unsupported audit reports. Each recklessly failed. Under N.J.S.A. 42:1A-306, each partner who personally participated in or recklessly failed to exercise required oversight over wrongful conduct is individually liable.

## VI. Friedman's November 2022 Post-Collapse Misrepresentation

44. On or about November 18, 2022 — after FTX's collapse, after PM's management had found audit files unfinalized, and after FTX's new CEO publicly expressed 'substantial concerns' about PM's audited financial statements — Friedman authorized PM to publicly state to Bloomberg Tax: 'We believe the financial statements of FTX Trading Ltd. as of 12/31/21 were fairly stated and we stand behind our audit opinion.' Made with reckless disregard for its falsity, this constitutes an independent wrongful act by Friedman occurring on or about November 18, 2022 — potentially invoking a separate claims-made policy year.

## VII. Statute of Limitations: Four Independent Theories

45. (1) RELATION BACK: Rule 15(c)(1)(C) permits relation back in Civil Action No. 2:23-cv-00389, timely filed January 31, 2023. (2) DISCOVERY RULE: Individual defendants' specific identities, roles, and personal conduct were not knowable until SEC Order Release No. 34-105184 on April 8, 2026. (3) FRAUDULENT CONCEALMENT: PM's continued defense of false audit opinions — including Friedman's November 2022 Bloomberg Tax statement — concealed the basis for individual claims. (4) EQUITABLE TOLLING: The pendency of Civil Action No. 2:23-cv-00389 equitably tolled limitations on all related individual partner claims.

# CAUSES OF ACTION

## COUNT I — PROFESSIONAL MALPRACTICE

### N.J.S.A. 2A:53A-25 — Against All Defendants

46. Plaintiffs incorporate all preceding paragraphs.

47. Under N.J.S.A. 2A:53A-25 and Petrillo v. Bachenberg, 139 N.J. 472 (1995), the three statutory elements are satisfied: (1) PM and each Defendant knew the FTX audits were produced for FTX's KYC-verified, specifically identifiable customer base — a defined class, not the public — and that the specified transaction was each customer's decision to deposit and maintain assets with FTX; (2) PM and each Defendant knew FTX's customers would rely on the audit opinions, as that was the stated commercial purpose of the engagement; (3) PM and each Defendant directly expressed their understanding through PM's marketing statements, Goldblatt's January 2022 public statement, the deleted June 2022 'proud to support FTX US' post, and PM's authorization of FTX's use of unqualified opinions in customer communications. In the alternative, the New York Credit Alliance test (Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536 (1985)) is satisfied on the same facts.

48. Each Defendant owed a personal duty of professional care, breached it through the individual reckless and negligent conduct described herein, and those breaches proximately caused aggregate losses exceeding USD $525,000,000.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages in excess of USD $525,000,000, consequential damages, interest, attorneys' fees to the extent permitted, costs of suit, and all further relief the Court deems just.

## COUNT II — GROSS NEGLIGENCE

**Against All Defendants**

49. Plaintiffs incorporate all preceding paragraphs.

50. Each Defendant's conduct demonstrates reckless indifference to professional obligations and conscious disregard for the rights of Plaintiffs. The following establish gross negligence: (a) accepting a novel, complex audit engagement without the baseline competence to perform it, then conducting two complete audit cycles without remedying the gap; (b) accepting a one-page IOU as documentation of a multi-billion-dollar related-party relationship while a workpaper notation flagged unrecorded transactions — and issuing an unqualified opinion regardless; (c) leaving audit workpapers unfinalized for over a year in violation of AU-C § 230.16; (d) each supervisory Defendant's reckless failure to supervise despite specific personal oversight obligations; (e) accepting the FTX engagement while known PCAOB-identified quality control deficiencies remained unresolved. This sustained pattern across multiple decision-points, by multiple senior professionals, over multiple audit cycles constitutes gross negligence supporting enhanced and punitive damages.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages in excess of USD $525,000,000, enhanced and punitive damages to be determined at trial, attorneys' fees, costs, and all further relief the Court deems just.

## COUNT III — NEGLIGENCE PER SE

**Against All Defendants**

51. Plaintiffs incorporate all preceding paragraphs.

52. GAAS, as codified in the AU-C sections described herein, constitute professional standards specifically designed to protect the class of persons — customers and creditors who rely

on audited financial statements — from economic loss through reliance on false audit opinions. Each Defendant violated specific GAAS standards including AU-C §§ 200.16-.19, 220.14, 230.08-.11, 230.16, 265.09-.12, 315.12, 315.26-.29, 550.11-.14, 550.18, and SQCS No. 8 ¶¶.27-.28 / SQMS No. 1 ¶¶.30-.34. Each Plaintiff is a member of the protected class. Each Plaintiff suffered the type of harm these standards prevent. Each Defendant's personal violation of GAAS constitutes negligence per se independently establishing liability.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages, attorneys' fees, costs, and all further relief the Court deems just.

## COUNT IV — NEGLIGENT MISREPRESENTATION

**Restatement (Second) of Torts § 552 — Against All Defendants**

53. Plaintiffs incorporate all preceding paragraphs.

54. New Jersey has adopted Restatement § 552. Each Defendant, in the course of business as a licensed CPA, supplied false information — the representation that PM's FTX audits were GAAS-compliant and FTX's financials fairly presented — for the guidance of FTX's customers in their deposit decisions. Each Defendant failed to exercise reasonable care or competence in obtaining or communicating this information, as established by the GAAS violations described herein. Each Plaintiff justifiably relied upon this information in making deposit decisions, suffering the losses claimed as a proximate result.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages, attorneys' fees, costs, and all further relief the Court deems just.

**COUNT V — RECKLESS MISREPRESENTATION**

**Against Defendant Decker Only**

55. Plaintiffs incorporate all preceding paragraphs.

56. Decker made the following specific false representations with reckless disregard for their truth or falsity: (a) On July 30, 2021, he personally authorized the Prager Metis audit report stating 'We conducted our audits in accordance with auditing standards generally accepted in the United States of America' — while aware that workpapers contained an open notation of unrecorded related-party transactions, the IOU was facially inadequate, the team lacked competence, and audit files remained unfinalized. SEC Order ¶¶ 17, 22. (b) On April 2, 2022, he again authorized a report with the same false GAAS-compliance representation for an audit conducted by the same incompetent team with the same unresolved deficiencies. SEC Order ¶¶ 18-19. These facts — all within Decker's personal knowledge — establish reckless disregard rather than mere negligence. Each Plaintiff relied upon these representations, suffering the losses described herein as a proximate result.

**WHEREFORE,** Plaintiffs demand judgment against Decker for compensatory damages, enhanced damages commensurate with his reckless disregard, attorneys' fees, costs, and all further relief the Court deems just.

**COUNT VI — POST-COLLAPSE RECKLESS MISREPRESENTATION**

**Against Defendant Friedman Only — November 18, 2022 Bloomberg Tax Statement**

57. Plaintiffs incorporate all preceding paragraphs.

58. This count concerns Friedman's independent post-collapse wrongful act with an independent accrual date of November 18, 2022. On that date, Friedman authorized PM to state publicly to Bloomberg Tax: 'We believe the financial statements of FTX Trading Ltd. as of 12/31/21 were fairly stated and we stand behind our audit opinion.' At that time Friedman knew or recklessly disregarded that: (a) FTX had collapsed due to the very misappropriation through the Alameda arrangement PM's audits recklessly failed to identify; (b) PM's management had found audit files unfinalized; and (c) FTX's new restructuring CEO had publicly expressed substantial concerns about PM's financial statements. By publicly defending the false audit opinions in these circumstances, Friedman made an affirmative reckless misrepresentation to the financial community and to FTX's customers, causing Plaintiffs ongoing harm in their efforts to understand and document their losses.

**WHEREFORE,** Plaintiffs demand judgment against Friedman for compensatory damages, enhanced damages, attorneys' fees, costs, and all further relief the Court deems just.

## <u>COUNT VII — SUBSTANTIAL ASSISTANCE IN PROFESSIONAL NEGLIGENCE</u>

**Against All Defendants**

59. Plaintiffs incorporate all preceding paragraphs.

60. Each supervisory Defendant — Roth, Aroyo, Moss, Goldblatt, Mayer, Friedlander, Brasch, Friedman, Michaelson, and Zarkowski — is individually liable for substantially assisting the primary professional negligence of the FTX engagement by: (a) approving or failing to

disapprove the FTX client acceptance; (b) failing to exercise required supervisory review of engagement status; (c) failing to identify and correct documented red flags; (d) approving or failing to prevent issuance of the false audit reports; and (e) in Goldblatt's case, publicly promoting PM's crypto-audit capabilities while recklessly failing to ensure those capabilities were deployed to the FTX engagement. Each Defendant knew or should have known of the primary negligence and provided substantial assistance through reckless inaction in the face of personal oversight responsibilities that required them to intervene.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants for compensatory damages, attorneys' fees, costs, and all further relief the Court deems just.

## COUNT VIII — CIVIL CONSPIRACY

**Intra-Firm Reckless Conduct — Against All Defendants**

61. Plaintiffs incorporate all preceding paragraphs.

62. Each named Defendant combined with the others and agreed to accept and conduct the FTX audit engagement and to issue reports representing GAAS compliance — each knowing or recklessly disregarding that PM lacked the requisite competence, that the engagement team was inadequate, that significant related-party red flags were going unaddressed, and that the resulting opinions would be relied upon by FTX's customers. The overt acts in furtherance of this agreement include: acceptance of the FTX engagement; promotion of PM's digital assets capabilities while deploying an incompetent team; issuance of both false audit reports; post-collapse closure of workpapers without correction; and Friedman's November 2022 public statement defending the false opinions.

This conspiracy is among the individual Defendants only. Plaintiffs do not allege any conspiracy between PM and FTX's principals.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants jointly and severally for compensatory damages, attorneys' fees, costs, and all further relief the Court deems just.

## COUNT IX — UNJUST ENRICHMENT AND FEE DISGORGEMENT

**Against All Defendants**

63. Plaintiffs incorporate all preceding paragraphs.

64. Each Defendant received personal financial benefit — in partnership distributions, equity draws, and bonuses — derived from PM's professional fees paid in connection with the FTX engagement. Those fees were paid from FTX's operating assets, which consisted substantially of customer deposits — including assets of Plaintiffs deposited in reliance on PM's audit representations. Retention of that benefit without restitution to Plaintiffs who funded it through their reliance and deposits would be inequitable under VRG Corp. v. GKN Realty Corp., 135 N.J. 539 (1994).

**WHEREFORE,** Plaintiffs demand judgment for disgorgement of all professional fees and personal income received in connection with the FTX engagement, compensatory damages, attorneys' fees, costs, and all further relief the Court deems just.

## DEMAND FOR JURY TRIAL

---

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

---

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

(A) Compensatory damages in an amount to be determined at trial, but in no event less than USD $525,000,000 representing aggregate losses of all Plaintiffs, including in excess of USD $25,000,000 for Alistair and in excess of USD $500,000,000 for Junhao;

(B) Enhanced and punitive damages against Defendant Decker individually — not subject to professional liability insurance coverage — in an amount commensurate with his reckless disregard for professional obligations;

(C) Enhanced and punitive damages against Defendant Friedman individually — not subject to professional liability insurance coverage — for his post-collapse reckless misrepresentation;

(D) Enhanced and punitive damages against all other individual Defendants to the extent the trier of fact finds their conduct warrants such damages under New Jersey law;

(E) Disgorgement of all professional fees and personal income received by each Defendant in connection with the FTX audit engagement;

(F) Pre-judgment and post-judgment interest at the maximum rate permitted by law;

(G) Reasonable attorneys' fees and costs of suit to the extent permitted by applicable law;

(H) Such other and further relief as this Court deems just, equitable, and appropriate.

Respectfully submitted,

**ANTHONY SCORDO, ESQ., P.C.**
NJ Attorney ID: 024591987
69 East Allendale Road, Saddle River, New Jersey 07458
Tel: (973) 837-1861 | AnthonyScordo@msn.com
*Lead New Jersey Counsel for Plaintiffs*

**EDWARD LEHMAN, ESQ. (IL SBN 6194489)**
*Pro Hac Vice Admission Pending*
Lehman, Lee & Xu LLC (Saipan #25977-001-1)
Suite 3313, Tower One, Times Square
1 Matheson Street, Causeway Bay, Hong Kong SAR
Tel: (852) 3588-2188 | elehman@lehmanlaw.com
*International Counsel for Plaintiffs*

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

I hereby certify that, to the best of my knowledge, information, and belief, formed after reasonable inquiry, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except for Lucky D. v. Prager Metis Civil Action No. 2:23-cv-00389, pending before this Court, to which this pleading is related and of which it constitutes a Second Amended Complaint. There are multiple plaintiffs all of whom reside overseas and it was impracticable to review the Complaint for their respective Verifications.

s/Anthony Scordo

ANTHONY SCORDO

Dated: May 8, 2026